1
2
3
4
5
6

FILED & ENTERED

JUL 05 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning   DEPUTY CLERK

7
8
9
10

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

11
12
13
14
15
16
17
18

In re:

SHANT JOHN MARKARIAN,

                              Debtor.

Case No. 2:19-bk-13111-RK

Chapter 7

**MEMORANDUM DECISION ON DEBTOR'S MOTION TO HOLD RESPONDENTS MERCHANTS ACQUISITION GROUP, LLC, BRUCE JACKMAN AND RICHARD W. SNYDER IN CONTEMPT AND ON RESPONDENTS' MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

19
20
21
22
23
24
25
26
27
28

        This Chapter 7 bankruptcy case came on for trial on April 6 and 7, 2022 before the undersigned United States Bankruptcy Judge in the contested matter of the motion of Debtor Shant Markarian ("Markarian") to hold Respondents Merchants Acquisition Group LLC, Bruce Jackman and Richard W. Snyder ("Respondents") in contempt of court for violating the discharge injunction in this case.  Sevan Gorginian, Law Office of Seven Gorginian, appeared for Debtor, and Richard W. Snyder, Law Office of Richard W. Snyder, appeared for Respondents.

        After the close of evidence, the court stated its tentative ruling that it would find that Respondents should not be held in contempt and instructed Respondents to lodge proposed findings of fact and conclusions of law.  However, the court did not state a

tentative ruling on the renewed motion of Respondents for summary adjudication of issues, which was orally renewed at trial. On May 6, 2022, Respondents lodged their proposed findings of fact and conclusions of law and their post-trial brief in support of their renewed motion for summary adjudication. On May 19, 2022, Markarian filed his post-trial brief in opposition to Respondent's post-trial brief in support of their renewed motion for summary adjudication. On May 27, 2022, Respondents filed their reply brief in response to Markarian's post-trial brief in opposition to their motion for summary adjudication. After the close of this briefing, the court took the contested matters of Markarian's contempt motion and Respondents' renewed motion for summary adjudication under submission.

In the contempt motion, Markarian seeks an order finding Respondents in contempt for: "(a) continually harassing the *pro se* Debtor for over 2 years via phone call and messages, (b) threatening Debtor's father with collection action, and (c) filing the State Court Action to seek damages against the Debtor personally." Notice of Motion & Motion for an Order to Show Cause Why Merchants Acquisition Group LLC, Bruce Jackman and Richard W. Snyder Should Not Be Held in Contempt for Violating the Discharge Injunction; Memorandum of Points and Authorities; Declarations of Shant Markarian, Wife Elyana Markarian & Counsel Seven Gorginian, Docket No. 31, filed on October 5, 2021, at 4. Markarian alleges that the court has authority to hold Respondents in contempt pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9020 for knowingly and willfully attempting to collect a discharged prepetition debt from him personally and to impose sanctions against them of a minimum of $50,000, consisting of actual damages to his mental health and punitive damages. *Id.* at 4, 20.

Having considered the evidence received at trial and the oral and written arguments of the parties, including the proposed findings of fact and conclusions of law, and the post-trial briefing, the court issues this memorandum decision, which sets forth its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52

made applicable to the contested matter of Markarian's contempt motion pursuant to

Federal Rules of Bankruptcy Procedure 7052 and 9014 and its ruling on Respondents'

motion for summary adjudication pursuant to Federal Rule of Bankruptcy Procedure

7056 relating to Markarian's contempt motion.

## JURISDICTION

The court has jurisdiction over the contested matter of Markarian's contempt

motion within the meaning of Federal Rule of Bankruptcy Procedure 9014 pursuant to

28 U.S.C. §§ 157 and 1334.  This contested matter is a core proceeding under 28

U.S.C. § 157(b)(2)(A) and (O).  Venue is proper pursuant to 28 U.S.C. § 1409(a) as this

bankruptcy case is pending in this federal judicial district.

## FACTS

On or about February 19, 2016, Markarian purchased a Rolex watch from Ben

Bridge Jewelers at the price of $9,319.50.  Markarian made a cash payment of

$2,800.00, but applied to Ben Bridge for a loan to cover the balance of the purchase

price of $6,519.50 by completing an electronic credit application to Ben Bridge.  Ben

Bridge approved Markarian's credit application, and he executed an agreement with

Ben Bridge to pay the balance in monthly installment payments and to give Ben Bridge

a purchase money security interest in the watch. [1] After executing the credit agreement

with Ben Bridge, Markarian only made one monthly installment payment of $340.00 on

March 28, 2016.  Markarian defaulted on the agreement when he failed to make the

next installment payment due on April 30, 2016 and to make any further payments on

the loan.  These facts relating to Markarian's purchase of the Rolex Watch on credit

---

[1] There is no dispute that Ben Bridge received a purchase money security interest in the Rolex watch when Markarian purchased it on credit from Ben Bridge as acknowledged by him on page 9 of the contempt motion.  The electronic sales receipt signed by Markarian acknowledged that Markarian as the signer agreed to the following: "I understand that Ben Bridge Jeweler retains a security interest in the goods purchased on this account until the unpaid balance of each separate purchase is fully paid. Payments will be applied to the earlier unpaid purchase.  I agree not to dispose of the goods, remove them from the address listed, or encumber them without written consent of Ben Bridge Jeweler, and will protect Ben Bridge Jeweler against all loss or damages to the goods from the time they are delivered until I have paid for them in full."  Rolex Sales Receipt, Respondents' Trial Exhibit R-2.  These facts establish Ben Bridge's purchase money security interest in the watch.  *See* California Commercial Code § 9103.

from Ben Bridge, the creation of Ben Bridge's purchase money security interest in the

watch and Markarian's default on his credit account with Ben Bridge are not disputed.

The Ben Bridge account records for Markarian's purchase of the watch covered

the time period from the opening of the credit account on February 19, 2016 to the date

that Ben Bridge received notice of Markarian's Chapter 7 bankruptcy case on March 30,

2019.  Trial Exhibit R-3; *see also,* Trial Declaration of Aaron R. Sheehan, Docket No.

53, filed on March 1, 2022 (the Ben Bridge account representative who spoke with

Markarian twice on June 28, 2016 and September 15, 2016 and who made five other

unsuccessful calls to Markarian between June and December 2016); Trial Declaration

of Irene Hansen, Docket No. 54, filed on March 1, 2022 (Ben Bridge credit manager and

custodian of records).  These account records contained electronic notes by account

representatives regarding their contacts with Markarian during this time period between

February 2016 and March 2019.  Ben Bridge account representative Sheehan in his trial

declaration as reflected in his electronic account notes stated that on June 28, 2016, he

spoke with Markarian who told him (Sheehan) that he (Markarian) had set up automatic

payments with someone in the Ben Bridge office, but according to Sheehan, the Ben

Bridge account records did not reflect any request to set up automatic payments that

was made.  According to Sheehan in his trial declaration, Markarian told Sheehan that

he (Markarian) would call back and make his payment after he checked his bank

account.  As Sheehan stated in his trial declaration, Markarian never called back and

made a payment.  According to Sheehan, "[m]y notes do not reflect that we discussed

the location or disposition of the Collateral.  If Markarian had advised me during our

brief conversation that he sold or disposed of the Collateral, the sale or disposal would

have been a big issue and I would have made a note of such representation in my

account notes."  Sheehan Trial Declaration, Docket No. 53 at 2.

Sheehan's account notes for his telephone conversation with Markarian on June

28, 2016 reflected that "the customer [Markarian] said he set up auto[matic] payments

with someone in our office" and "he (Markarian) said he would need to call us back to

make a payment after he checks his bank."  Trial Exhibit R-3 at 1.

Sheehan in his trial declaration as reflected in his account notes stated that he called Markarian on July 21, 2016 and August 26, 2016, was not able to reach him and left a message for Markarian to call him back (i.e., "LMTCB"), and called Markarian again on September 15, 2016, and spoke with Markarian on that call, who said that "he (Markarian) will speak to his spouse about the account."  Sheehan in his trial declaration as reflected in his account notes stated that he attempted to call Markarian on October 12, 2016, November 18, 2016 and December 23, 2016 and was not able to reach him and left a message for Markarian to call him back (i.e., "LMTCB").  Sheehan in his trial declaration stated that as reflected in his account notes, he did not receive a call back from Markarian after these calls.  On December 31, 2016, Ben Bridge charged off the balance of the loan owed by Markarian under the agreement in the amount of $7,107.07.

As reflected in the Ben Bridge account representative's notes, on May 30, 2017, Markarian called Ben Bridge and advised another account representative named Veronica that he (Markarian) wanted to start making payments on the agreement again. Trial Exhibit R-3 at 1-2.  Ben Bridge account representative Veronica's notes stated that the customer [i.e. Markarian] called and "said he just got out of jail and wanted to get started on making payments against" and "said he would be making a payment either today or tomorrow."  Veronica's account notes also stated that she consulted with Sheehan about the account, and they agreed on behalf of Ben Bridge to reinstate Markarian's credit account and extended the term of the payment plan under the credit agreement from 24 to 48 months, which reduced Markarian's monthly installment payment from $340.00 to $205.00.  Trial Exhibit R-3 at 2; Sheehan Trial Declaration at 1-2.  Even though Ben Bridge agreed to reinstate Markarian's credit account and modified the terms of the credit agreement, Markarian failed to make any further payments on the account.  Veronica's account notes of her telephone conversation with Markarian on May 30, 2017 do not reflect that he told her that he had disposed of the

1  watch.  Trial Exhibit R-3 at 1-2.

2      The Ben Bridge's account representative notes in the account records indicate

3  numerous attempts to contact Markarian about the account delinquency between June

4  2016 and March 2019, but Ben Bridge was only able to have three telephone

5  conversations with Markarian because he was generally not responding to Ben Bridge's

6  telephone calls to him, and when its account representatives were able to reach him,

7  Markarian made statements to deflect their requests for payment, such as he needed to

8  check with his bank or his spouse or he would make a payment "today or tomorrow," but

9  no payment was made.

10     The above-recited facts relating to the Ben Bridge's charge-off, Markarian's

11  request for reinstatement of his account and modification of the credit agreement,

12  Markarian's continued failure to make payments under the agreement and continuing

13  contacts and conversations between Markarian and Ben Bridge are reflected in Ben

14  Bridge account representative notes in the Ben Bridge business records for the

15  Markarian's credit account, which were received into evidence and are not disputed.

16     On March 21, 2019, Markarian commenced this bankruptcy case by filing a

17  voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., and an

18  order for relief was entered on the petition.  Movant's Trial Exhibits M-1 through M-3.

19  Markarian filed his bankruptcy petition *pro se* as a self-represented litigant.  Ben

20  Bridge's account records reflect that it received notice of Markarian's bankruptcy case

21  on March 30, 2019.  Trial Exhibit R-3; Sheehan Trial Declaration at 3.  Upon the entry of

22  the order for relief in this case, the automatic stay against action to collect prepetition

23  debts owed by Markarian pursuant to 11 U.S.C. § 362 went into effect, and Ben Bridge

24  was stayed from undertaking collection activity on the Markarian account relating to the

25  purchase of the Rolex watch.

26     According to Respondent Jackman in his trial declaration, on or about April 17,

27  2019, Ben Bridge contacted Respondent Merchants Acquisition Group LLC (Merchants)

28  and placed the Markarian account relating to the Rolex watch with Merchants to

1  ascertain the location and/or disposition of the watch, Ben Bridge's collateral, and/or

2  settle or compromise Ben Bridge's contractual rights in the account.  Declaration of

3  Bruce Jackman, Docket No. 51, filed on February 22, 2022.  According to Jackman in

4  his trial declaration and oral testimony at trial, he is the director of operations at

5  Merchants, and Merchants represents clients like Ben Bridge in attempting to locate

6  collateral held by bankruptcy debtors after a bankruptcy case is filed and to settle or

7  compromise the client's contractual rights in unpaid credit accounts owed by bankruptcy

8  debtors. Respondent Snyder represents Merchants as its counsel.  According to

9  Jackman, Merchants's business relationship with Ben Bridge since 2016 was always for

10  the exclusive purpose of assisting Ben Bridge with its rights in assigned accounts after

11  an account holder filed a bankruptcy case, and Merchants has never handled an

12  account from Ben Bridge until the account holder filed for bankruptcy.  When Ben

13  Bridge placed the Markarian account with Merchants on or about April 17, 2019,

14  Merchants started to work on the account.  According to Jackman, neither he nor

15  Merchants had any interaction or involvement with Markarian or Ben Bridge's account

16  relating to Markarian before April 17, 2019 when Ben Bridge placed the account with

17  Merchants.  The court finds Jackman's testimony on these points to be credible and

18  supported by the trial declaration of Ben Bridge account representative, Sheehan, and

19  the documentary evidence, especially the Ben Bridge account records, showing that

20  Ben Bridge had continuing contact with Markarian until it placed the account with

21  Merchants in April 2019 after Markarian filed for bankruptcy in March 2019.  Thus, the

22  court can infer that Markarian's contacts prepetition about his account for the watch was

23  with Ben Bridge, not Merchants.

24      Markarian in his trial declaration stated that when he bought the watch in

25  February 19, 2016, he was employed, working and staying on top of his obligations, but

26  that three months afterwards, he lost his job and relying on credit cards to support his

27  family, that he also fell behind in the rent he owed to his father, Paul Markarian, for the

28  house he was renting, that his father threatened eviction if he did not cure the rent

arrears of about $8,000.00, that he decided to give the watch to his father in exchange

for payment of the rent arrears and that his father agreed and took the watch.

Declaration of Shant Paul Markarian, Docket No. 48, filed on February 18, 2022.

According to Markarian in his trial declaration, this led to his default on his loan from

Ben Bridge.  Markarian stated in his trial declaration that after that, Ben Bridge called

him for the late payments, and he told the Ben Bridge representatives that he gave the

watch away.  Markarian in his trial declaration then stated that he spoke with Jackman

several times, telling Jackman each time that he gave the watch to his father on account

of back rent.  According to Markarian in his trial declaration, Jackman became

aggressive and kept telling him (Markarian) that he (Jackman) was an attorney for Ben

Bridge, and that they can sue him (Markarian) if the watch was not given up.  Markarian

asserted that Jackman posed as an attorney to him and that Jackman threatened to sue

his father.  According to Markarian in his trial declaration, this "cruel behavior" continued

for months until he decided to finally file for bankruptcy to stop the harassment.

        Having heard the written testimony of both Jackman and Markarian in their trial

declaration and their oral testimony at trial, the court finds that Jackman's testimony

regarding the lack of prepetition contact with Markarian by him and Merchants is

credible and that Markarian's testimony that there was such contact is not credible.

While Markarian's testimony that he was having financial distress from loss of his job

and income to support his family and to pay rent to his father is credible, his testimony

about prepetition contact with Jackman and Merchants is not generally credible.

Markarian's testimony is not consistent with Ben Bridge account representative

Sheehan's testimony in his trial declaration, which the court finds credible, and Ben

Bridge's account records showing that its representatives had continuing contact with

Markarian until he filed for bankruptcy in March 2019, specifically indicating that Ben

Bridge agreed to reinstate his credit account and modify the payment terms after

Markarian contacted Ben Bridge in May 2017.  Moreover, as noted by Respondents, the

Ben Bridge account records do not reflect any conversation between its account

representatives and Markarian about any transfer or other disposition of the watch.  It seems to the court that if Markarian had told Ben Bridge that he had disposed of the collateral by giving it to his father as he stated in his trial declaration, Ben Bridge would not have agreed to reinstate the account and give him more favorable repayment terms. Markarian testified that when he bought the watch in February 2016 he was working and staying on top of his obligation, but this all changed when he lost his job three months later because, as shown by the Ben Bridge account records, he only made one monthly payment on the watch and defaulted in failing to make the second monthly payment in April 2016, two months after buying the watch.  Markarian's credibility also suffers because as reflected in the numerous attempts of Ben Bridge account representatives to contact him about the delinquent account, he either made inaccurate statements to them or failed to return their calls, and as Markarian admitted in his testimony at trial, he represented his current monthly income to Ben Bridge in applying for credit was $12,000.00 from his business, although he never actually received that much.

The court finds Markarian's testimony that Respondents engaged in harassing behavior to collect the Ben Bridge account before he filed for bankruptcy is not credible as he could not remember specifically with whom he talked to about the account before bankruptcy, and thus it appears that Markarian mixed up his prepetition contacts with Ben Bridge and his postpetition contacts with Merchants.  While the parties acknowledge that prepetition collection action cannot be considered a violation of the bankruptcy discharge injunction pursuant to 11 U.S.C. § 524, Markarian's testimony does not show that Respondents engaged in a continuing pattern of harassment, which started prepetition.  Moreover, as to Respondent Snyder, there is no credible evidence that he had any contact or involvement with Markarian or the Ben Bridge account prepetition as he has represented Merchants, not Ben Bridge, and thus, had no reason to be involved with the account before Ben Bridge's placement of the account with Merchants in April 2019.  Therefore, the court finds that Respondents Merchants,

Jackman and Snyder had no contact or involvement with Markarian or his credit

account until Ben Bridge placed the account with Merchants on or about April 17, 2019.

As to Markarian's assertion that Jackman misrepresented to him that he (Jackman) was

an attorney, having heard testimony of both of them, the court finds that Markarian's

testimony on this point not to be credible and that his assertion is unfounded.

Regarding Merchants' handling of Markarian's credit account for Ben Bridge, on

or about April 18, 2022, Jackman on behalf of Merchants first reviewed Markarian's

bankruptcy petition, schedules and Statement of Financial Affairs filed in this bankruptcy

case.  Jackman Declaration at 4-5.  Jackman noted that Markarian had stated on

Schedule A/B to his bankruptcy petition asking him to list his personal property assets

that he owned or had a legal or equitable interest in that he had a "Men's watch".

Jackman also noted that Markarian in response to inquiries regarding his assets stated

under penalty of perjury on his Statement of Financial Affairs that in the one year before

bankruptcy, no property had been repossessed, foreclosed, garnished, attached, levied

or seized, in the two years before bankruptcy, no property valued in excess of $600.00

was given as a gift or donated to charity, in the one year before bankruptcy, no property

was lost due to theft, fire, other disaster or gambling, and in the two years before

bankruptcy no property was sold, traded or otherwise transferred to Markarian.  Based

on his review of these disclosures by Markarian in his bankruptcy petition and

schedules, Jackman testified that the evidence was inconclusive as to whether

Markarian still owned the watch at the time of his bankruptcy and decided to contact

Markarian to inquire about the status of the watch.  As Jackman explained in his trial

declaration, on one hand, Markarian listed a "Men's watch" as a personal property asset

owned when he filed his bankruptcy petition, but the disclosures regarding gifts,

transfers and other dispositions of assets before bankruptcy did not cover the entire

period of three years and one month between the date of purchase in February 2016

and the date of the bankruptcy filing in March 2019.  The court finds that it was

reasonable for Jackman on behalf of Merchants acting for its client, Ben Bridge, to

conclude that it was proper to contact Markarian about the status of the watch, Ben

Bridge's collateral as a secured creditor, as Markarian's listing of a watch as an asset

on his bankruptcy schedules and his statements on his Statement of Financial Affairs

that he did not make any transfers of personal property within two years of bankruptcy

and his contact with Ben Bridge to reinstate his creditor account in May 2017 within that

same two year period suggested that he still owned the Rolex watch that he bought

from Ben Bridge.

On or about April 19, 2019, Jackman on behalf of Merchants mailed a letter he

wrote to Markarian acknowledging the latter's bankruptcy filing, but advising Markarian

of Ben Bridge's security interest in the watch as its collateral for the loan it made to

Markarian and the default status of the credit account.  Trial Exhibit R-7.  Jackman's

letter further advised Markarian that Markarian did not have the right to retain the watch,

Ben Bridge's collateral, without bringing the credit account current and proposed that

Markarian either execute an agreement to reaffirm the debt or surrender the collateral to

Ben Bridge.  According to Jackman in his trial declaration, Merchants did not receive

any response to this letter.

Receiving no response to the April 19, 2019 letter, on or about April 29, 2019,

Jackman on behalf of Merchants mailed a letter he wrote to Markarian again advising

Markarian of Ben Bridge's security interest in the watch as its collateral for the loan it

made to Markarian and demanding that Markarian comply with 11 U.S.C. § 521(2)(A)

requiring disclosure of his intention regarding the watch, Ben Bridge's collateral, that is,

whether Markarian intended to redeem, reaffirm or surrender the collateral.  Trial Exhibit

R-8.  According to Jackman in his trial declaration, Merchants did not receive any

response to this letter as well.

Receiving no response to his two letters of April 19, 2019 and April 29, 2019

letter, on or about May 14, 2019, Jackman on behalf of Merchants requested its

attorney, Snyder, to prepare and mail a letter to Markarian demanding that Markarian

contact Merchants, comply with 11 U.S.C. § 521(a)(2)(A) requiring disclosure of his

1  intention regarding the watch, Ben Bridge's collateral, that is, whether Markarian

2  intended to redeem, reaffirm or surrender the collateral, and to disclose the present

3  location of the watch.  Snyder prepared and mailed this letter to Markarian and further

4  advised Markarian in this letter that if Markarian continued to ignore Merchants's letters,

5  it would have no alternative, but to apply to the bankruptcy court for an order authorizing

6  his examination pursuant to Federal Rule of Bankruptcy Procedure 2004.  Trial Exhibit

7  R-9.  According to Jackman in his trial declaration, neither Merchants nor Snyder

8  received any response to this letter.

9       Based on Markarian's lack of response to Merchants's letters by Jackman and

10  Snyder, Jackman concluded that Markarian was not going to disclose the location

11  and/or disposition of Ben Bridge's collateral, the watch, and that an examination of

12  Markarian would be necessary to obtain that information.  Jackman then requested that

13  Ben Bridge assign the credit account for the watch to Merchants, which was executed

14  by Ben Bridge on May 24, 2019.  Trial Exhibit R-10.  On May 29, 2019, at Jackman's

15  direction, Merchants filed a motion in this bankruptcy case for an order authorizing

16  Markarian's examination pursuant to Federal Rule of Bankruptcy Procedure 2004,

17  requesting that the examination be scheduled for June 24, 2019, which was the last

18  date to file a nondischargeability action against Markarian.  Trial Exhibit R-11.

19       On June 3, 2019, Markarian called Merchants, and Jackman spoke with him.

20  Jackman stated in his trial declaration that in this telephone conversation, Markarian

21  told him that he rented a house from his father, Paul Markarian, and he fell behind in the

22  rent, that in December 2018, he and his father went to a Rolex dealer to get an

23  appraisal of the watch, that the dealer appraised the watch at $6,000.00 to $7,000.00,

24  and that after the appraisal, he gave the watch to his father to secure payment of the

25  back rent to his father.  Jackman Declaration at 6-7.  Jackman stated in his trial

26  declaration that he specifically recalled that the transfer by Markarian to his father was

27  not a sale but a pledge.  Jackman stated in his trial declaration that he suggested to

28  Markarian that he go to his father and request the father to return the watch so that the

collection matter over the watch would be resolved.  According to Jackman in his trial

declaration, Markarian wanted to avoid the Rule 2004 examination, and Jackman

responded and advised Markarian that if he surrendered the collateral, the examination

would not be necessary.  Based on this telephone conversation, Jackman determined

that Markarian's statements to him in the conversation were truthful and that it would be

best for Merchants to forgo any nondischargeability action and focus on recovery of the

collateral from Paul.  Having considered Jackman's testimony in his trial declaration and

live at trial, the court finds that his testimony on these points is credible and that he

accurately recited the telephone conversation between him and Markarian on June 3,

2019.

On June 4, 2019, the court denied Merchants's motion for a Rule 2004

examination of Markarian on technical grounds, finding that Merchants did not satisfy

the prefiling meet and confer requirements of Local Bankruptcy Rule 2004-1.  Trial

Declaration R-12.  Since the motion was denied without prejudice and Markarian

disclosed the location and disposition of the collateral, Jackman determined that the

need for a Rule 2004 examination was moot and therefore did not request Merchants's

counsel to file another motion.  Jackman Declaration at 7-8.

On June 17, 2019, Jackman telephoned Markarian to inquire whether he had

obtained the collateral back from his father.  However, as Jackman stated in his trial

declaration, Markarian answered the phone and told Jackman that he had a bad

connection and asked Jackman to call back later.  Jackman Declaration at 8.  Having

heard the testimony of both Jackman and Markarian at trial, the court finds that

Jackman's testimony on this point is credible.

On June 20, 2019, Jackman telephoned Markarian again to inquire whether he

obtained the collateral back from his father, but there was no answer, and Jackman was

forced to leave a message for a return call.  Jackman Declaration at 8.  Having heard

the testimony of both Jackman and Markarian at trial, the court finds that Jackman's

testimony on this point is credible.

On June 24, 2019, Jackman concluded that Markarian was not going to return his calls and that Markarian was not going to get the collateral back from his father to turn over to Merchants as Jackman suggested to Markarian in their June 3, 2019 telephone call.  Jackman Declaration at 8.  Jackman on behalf of Merchants then sent a letter to Paul Markarian, which demanded the immediate surrender of the collateral, the watch, but Merchants did not receive any response to this letter.  *Id.;* Trial Exhibit R-13.

On June 25, 2019, the court entered an order closing this bankruptcy case without discharge.  Trial Exhibit R-14.  Because the automatic stay was lifted upon closure of the case, on June 28, 2019, Merchants sent a letter to Markarian, informing him of the balance due on the credit account and requested that he make a payment arrangement.  Trial Exhibit R-15.

On September 6, 2019, Merchants sent another letter to Markarian demanding that he begin making payments on the credit account or otherwise make some arrangement to resolve the default on the loan agreement or surrender the collateral.  Trial Exhibit R-16.  Also, on that same day, Merchants sent a letter to Paul Markarian demanding him to immediately surrender the collateral.  Trial Exhibit R-17.

On September 19, 2019, Markarian called Merchants, and Jackman spoke with him.  Jackman took detailed notes of their telephone conversation and immediately thereafter made an electronic notation in his account notes of this telephone conversation.  Jackman Declaration at 9-10.  According to Jackman, Markarian told him that he (Markarian) lied to him in their June 3, 2019 telephone conversation, that instead, he (Markarian) took the watch to Las Vegas and met a woman there who stole the watch from him, and that he (Markarian) concocted the story of the pledge to his father in order to deceive his wife.  According to Jackman, he told Markarian that he (Jackman) did not believe him (Markarian).  Then according to Jackman, Markarian offered to pay $5,000.00 in full settlement of the account, and Jackman counteroffered that Markarian pay $7,500.00 with $5,000.00 down and five monthly installment payments of $500.00.  Then according to Jackman, Markarian made his counteroffer of

$6,000.00 with $5,000.00 down and $1,000.00 in monthly payments, and in response, Jackman reiterated his original counteroffer, advising Markarian that the counteroffer would remain open for two weeks.  According to Jackman, Markarian told him that he would speak to a friend about a loan and would call Jackman back.  Having heard the testimony of both Jackman and Markarian at trial, the court finds that Jackman's testimony about their telephone conversation on September 19, 2019 is credible.

On October 16, 2019, Markarian filed a motion in this bankruptcy case for an order reopening the case so he could file his certificate of completion of a financial management course to obtain his discharge, which the court granted.  Trial Exhibit R-18.  On October 21, 2019, the court entered an order of discharge in this bankruptcy case.  Trial Exhibit R-20.  The order of discharge contained an explanation of the order which stated in  part: "However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated.  For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile."

On or about November 8, 2019, Snyder, Merchants's attorney, mailed a letter he wrote to Paul Markarian informing him of Merchants's lien on the watch, its collateral, and stating that Merchants had been informed that he (Paul Markarian) was in possession of the collateral.  Trial Exhibit R-21.  Snyder in this letter notified Paul Markarian that Merchants may sue him to recover the collateral.  Merchants did not receive a response to this letter.

On or about January 10, 2020, Jackman on behalf of Merchants mailed a letter he wrote to Markarian, advising Markarian of Merchants's lien on the collateral, the watch, and demanding Markarian immediately surrender the collateral.  Trial Exhibit R-22.  Jackman's letter to Markarian offered him an option to retain the collateral through a settlement, which would effectively allow him to purchase the watch in lieu of surrender.  According to Jackman in his trial declaration, Merchants did not receive any response to this letter.

On or about September 18, 2020, Snyder, Merchants's attorney, mailed a letter he wrote to Markarian informing him of Merchants's lien on the watch, its collateral, and stating that Merchants had been informed that he (Markarian) was in possession of the collateral.  Trial Exhibit R-25.  Snyder in this letter demanded that Markarian produce the collateral pursuant to Uniform Commercial Code § 9-603(c).  Merchants did not receive a response to this letter.

On or about October 2, 2020, Jackman on behalf of Merchants mailed a letter he wrote to Markarian, providing Markarian with information on how to make arrangements for the surrender of the collateral.  Trial Exhibit R-26.  According to Jackman in his trial declaration, Merchants did not receive any response to this letter.

On or about November 30, 2020, Snyder, Merchants's attorney, mailed another letter he wrote to Markarian informing him of Merchants's lien on the watch, its collateral, and stating that Merchants had been informed that he (Markarian) was in possession of the collateral.  Trial Exhibit R-27.  Snyder in this letter again demanded that Markarian surrender the collateral.  Merchants again did not receive a response to this letter.

On or about February 1, 2021, Jackman on behalf of Merchants mailed a letter he wrote to Markarian, informing Markarian with information on his failure to surrender the collateral, and offering to settle the matter.  Trial Exhibit R-28.  According to Jackman in his trial declaration, Merchants did not receive any response to this letter.

On July 21, 2021, Merchants commenced a lawsuit against Markarian in the Superior Court of California for the County of Los Angeles by filing a complaint for recovery of personal property pursuant to California Code of Civil Procedure § 667.  Trial Exhibit R-29.  The complaint alleged that Merchants is the assignee of Ben Bridge which had sold personal property, the watch, to Markarian who purchased it on credit, executing a contract which gave Ben Bridge a purchase money security interest in the watch as collateral to secure the balance of the purchase price, that Markarian defaulted on the contract by failing to make the installment payments under the contract

and that Markarian had filed for bankruptcy, which resulted in a discharge order being

entered by this court.  The complaint further alleged that "[a]ll conditions precedent to

the enforcement of Ben Bridge's rights under the Contract, and all acts to be performed

by Ben Bridge under the Contract have occurred in substantially the form and manner

required by the contract or otherwise."  Merchants in the prayer for relief in the

complaint requested a money judgment under California Code of Civil Procedure § 667

"for the value of [Merchants's] interest in the Collateral in the sum of $9,319.50 in case

delivery thereof cannot be had as a result of Defendant's conversion of the Collateral

after the commencement of the bankruptcy case," for interest from the time of

conversion, for costs of suit and for other and further relief as the court may deem just

and proper.

On August 26, 2021, Merchants served Markarian with the state court complaint,

and Markarian does not dispute that he was served.  Trial Exhibit R-30; Markarian's

Contempt Motion, Docket No. 31 at 13.  After being served, Markarian attempted to call

Snyder between September 9 and 14, 2021, and finally, on September 14, 2021,

Markarian spoke with Snyder, and Markarian in his trial declaration said that he told

Snyder that he did not have the watch, that Snyder told him to "do what you need to do,"

"[i]f you do not have the watch, then we can get a judgment" and "you can make an offer

and I will take it to my client."  Markarian Trial Declaration, Docket No. 48 at 6.

Markarian did not file an answer to Merchant's complaint in the state court action,

but rather, on October 1, 2021, he filed a motion in this court to reopen the bankruptcy

case for the purpose of filing the contempt motion against Respondents.  On October 5,

2021, Markarian commenced this contested matter by filing his motion for issuance of

an order to show cause to hold Respondents in contempt.  Markarian's Contempt

Motion, Docket No. 31.

On October 12, 2021, Respondents filed an opposition to Markarian's motion for

issuance of an order to show cause to hold them in contempt, contending that the state

court action did not violate the discharge injunction because Merchants was seeking to

recover its collateral which they alleged Markarian had converted postpetition.

Also, on October 12, 2021, Merchants filed a request for entry of default judgment against Markarian in the state court action.  Trial Exhibits R-33, R-34 and R-36.

On October 18, 2022, the court in this bankruptcy case entered an order on Markarian's motion for issuance of an order to show cause to hold Respondents in contempt that stated that the court would consider the contempt motion as a contested matter and set the matter for a status conference to schedule further proceedings.

On October 25, 2021, the state court entered a default judgment in favor of Merchants and against Markarian in the amount of $10,029.67, including the asserted value of the collateral of $9,319.50, prejudgment interest of $372.77 and costs of suit of $337.40.  Trial Exhibit R-37.  However, in granting default judgment, the state court did not make any express factual findings in favor of Merchants or against Markarian, including whether Merchants was entitled to possession of the collateral and whether Markarian was in possession of the collateral at the time the complaint was filed.

On November 16, 2021, the court conducted a status conference on the contested matter of Markarian's contempt motion and set the matter for trial on March 2 and 3, 2022.  By subsequent stipulation and order, the court continued the trial from March 2 and 3, 2022 to April 6 and 7, 2022.

On March 9, 2022, Respondents filed their motion for summary adjudication of issues, which they noticed for hearing on April 5, 2022.  On March 18, 2022, the court entered an order denying Respondents' motion for summary adjudication of issues without prejudice because they did not provide 42 days notice of hearing as required by Local Bankruptcy Rule 7056-1 in noticing the motion for hearing on April 5, 2022, the day before the start of the trial.  However, the court ruled that Respondents could renew their summary adjudication motion orally at trial, which they did.  Markarian filed an opposition to Respondents' summary adjudication motion.  The parties filed further post-trial briefs on the summary adjudication motion.

On April 6 and 7, 2022, the court conducted the trial of the contested matter of Markarian's contempt motion, and the court received the testimony of Markarian, his father, Paul Markarian, Jackman and Snyder and the exhibits offered by the parties. Markarian and his father, Paul Markarian, testified that Markarian gave the watch, Ben Bridge's collateral, to the father in exchange for past due rent of the house that the father owned and Markarian and his family had rented from the father to live.  Markarian testified that Markarian fell behind in the rent owed to his father, that his father demanded payment, that Markarian offered the watch as payment of the back rent, that Markarian and his father went to a Rolex dealer to have the watch appraised, that the watch was appraised at about $7,000 and that the father after visiting the Rolex dealer agreed to take the watch in exchange for the past due rent.  Markarian testified at trial that he gave his father the watch outright, and not as a pledge to secure payment of the past due rent in the future.

Paul Markarian testified that at trial his son was always late on payment of rent to him and that he took the watch in exchange for credit for three months back rent by the end of 2016 after threatening to evict his son.  However, Paul Markarian could not remember when asked about specific amounts of how much rent was due at a given time during the 2016 to 2018 time period as he did not keep a ledger or other written record of the rent account.  That is, he said he remembered that his son was delinquent three months rent in 2016, but could not remember specifically how much rent was past due in 2017 or 2018.  The best that Paul Markarian could remember is that his son was always late.

As a factual matter, the court finds that Paul Markarian's testimony is credible in part that Markarian gave the watch to his father, Paul Markarian, in exchange for past due rent outright as opposed to just pledging the watch as collateral to secure future payment of the past due rent.  Paul Markarian's testimony is credible that he took the watch outright as he was giving his son three months credit for past due rent at $2,200 per month for the value of the watch based on a valuation by a third party, which was

either a pawn shop as he remembered in his testimony or a Rolex dealer as Markarian

testified, and that this testimony of the father supports a finding that this transaction was

an exchange or outright transfer and not just a pledge of collateral.

Having heard the testimony of Paul Markarian that he took the watch outright,

and not as a pledge for future payment, the court finds that his testimony was very

credible on that point.

Regarding the timing of Markarian's transfer of the watch to his father, Markarian

and his father, Paul Markarian, testified that the transfer was in 2016 rather than in 2018

as Markarian told Jackman in their telephone conversation on June 3, 2019.  On this

point, the court finds that the testimony of Markarian and his father not to be credible

and that the testimony of Jackman to be credible.  Markarian's testimony lacks

credibility because he gave inconsistent statements to Jackman during their telephone

conversations about the status and disposition of the watch, his statements given to

Ben Bridge as reflected in its account history were deceptive about his intent to repay

Ben Bridge as shown by his repeated broken promises to make payment on the

account and that the transfer of the watch in 2018 is more consistent with other facts in

the case.  A 2018 transfer is more consistent with the sequence of events after the

charge-off of the account in 2016, specifically, in May 2017, Markarian contacted Ben

Bridge to request reinstatement of the credit account, and Ben Bridge agreed to

reinstate the account and gave Markarian more favorable credit terms.  It is unlikely that

Ben Bridge would have reinstated the account, giving more liberal repayment terms, if

Markarian had informed it that he disposed of the collateral by giving it to his father.

(The Ben Bridge account representative, Sheehan, in speaking with Markarian in May

2017, Markarian never told Sheehan that Markarian had sold or disposed of the watch,

which would have been a "big deal" for Ben Bridge as disposing or encumbering the

watch was a breach of the credit agreement.  Sheehan Trial Declaration, Docket No. 53,

at 2; Trial Exhibit R-2 at 1.)  By contacting Ben Bridge in May 2017 to request

reinstatement of the account and promising to make payments, Markarian evinced an

1  interest in retaining the watch, which seems inconsistent with a transfer of the watch to

2  his father.  The photos of Markarian wearing a Rolex watch posted on Facebook in

3  2016, 2017, 2018 and 2021 introduced by Respondents into evidence indicate that

4  Markarian enjoyed showing that he was wearing a Rolex watch, Trial Exhibits R-38

5  through R-47, though he had given testimony at trial that the watch shown in these

6  photos was a fake watch he bought in Hong Kong. [2]  Nevertheless, Markarian's

7  contacts with Ben Bridge and Merchants about making repayment arrangements

8  indicate a continuing interest and possession of the Rolex watch that he purchased from

9  Ben Bridge.  The timing of the filing of Markarian's bankruptcy case in 2019 indicates

10  that the financial distress that he was having occurred later in the 2018 time period

11  rather than in the 2016 time period.  Regarding Paul Markarian's testimony that his son

12  gave him the watch at the end of 2016, the court finds that this testimony had credibility

13  problems due to his inability to recall details about specific times, apparently due to

14  memory problems from age (Paul Markarian testified at trial that he was 74 years old).

15  The other evidence described above regarding Markarian's contacts with Ben Bridge

16  and Merchants regarding the credit account supports a finding that his transfer of the

17  watch to his father was in 2018 as he told Jackman.

18      At trial, Respondents orally renewed their motion for summary adjudication, and

19  the court heard arguments on that motion.  The parties filed post-trial briefing on this

20  motion, which is discussed below.

21      ///

22      ///

23      ///

24

25  [2]  Respondents' exhibits include photos posted by Markarian in 2018 and 2021 showing him wearing a
26  Rolex watch, which he argues do not necessarily indicate the year when the photos were taken and
    which were taken of him wearing a fake Rolex watch as opposed to the real Rolex watch, the collateral.
    The photos indicate Markarian's continuing interest in being shown wearing a Rolex watch to the outside
27  world, which may be probative of possession and continuing interest in possession.  Trial Exhibits R-
    39(a), R-39(b), 40 and 41. As indicated earlier, the court finds that Markarian possessed the watch until
28  he gave it to his father in 2018 in exchange for back rent, which is consistent with Markarian's continuing
    interest in possessing the watch by contacting Ben Bridge to reestablish the credit account in May 2017.

**DISCUSSION**

**Contempt**

Bankruptcy courts have authority over civil contempt proceedings under 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9020. *Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine*), 77 F.3d 278, 284-285 (9th Cir. 1996). In civil contempt proceedings, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Dyer v. Lindblade* (*In re Dyer*), 322 F.3d 1178, 1190-1191 (9th Cir. 2003) (quoting *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002)). Clear and convincing evidence is a "higher standard than the preponderance of the evidence standard but less stringent than beyond a reasonable doubt." *United States v. Powers*, 629 F.2d 619, 626 n. 6 (9th Cir. 1980).

"[A] court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen,* 139 S.Ct. 1795, 1799 (2019) (emphasis in original). "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id*. The Ninth Circuit recently considered the Taggart case on remand, applying the objective reasonableness standard directed by the Supreme Court. *In re Taggart*, 980 F.3d 1340 (9th Cir. 2020). 234. As the Ninth Circuit stated in *Taggart* on remand, "Civil contempt is a 'severe remedy' and, correspondingly, the Supreme Court has set a significantly high hurdle for when it is imposed." *Id*. at 1347, citing *Taggart v. Lorenzen*, 139 S.Ct. at 1802. As the Ninth Circuit further observed, "[t]he standard is rooted in the concept that 'basic fairness requir[es] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt.'" *Id*. (internal quotation marks and citation omitted). Thus, the appropriate standard is, as observed by the Ninth Circuit, quoting the Supreme Court, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id*., *citing*

1 | *and quoting*, *Taggart v. Lorenzen*, 139 S.Ct at 1799.

2 |       Here, the court must apply the Supreme Court's standard as recently considered

3 | by the Ninth Circuit in *In re Taggart*, that is, the court must determine whether

4 | Respondents had any objectively reasonable basis for concluding that their

5 | enforcement of Merchants' lien against the collateral might be lawful and thus, might not

6 | violate the discharge injunction from this case.   *In re Taggart*, 980 F.3d at 1348.

7 |       Under this objective standard of *Taggart*, the court finds that as discussed herein,

8 | Markarian has not proven by clear and convincing evidence that Respondents violated

9 | the discharge injunction in this case by taking action to collect a discharged prepetition

10 | debt against Markarian.  The court finds that Markarian's allegations that Respondents

11 | engaged in harassing communications to him before his bankruptcy case was filed to be

12 | unsubstantiated as the evidence indicates that Respondents were only involved with

13 | Markarian's account after he filed for bankruptcy.  Moreover, the court finds that the

14 | evidence of Respondents' written and oral communications with Markarian indicates

15 | that Respondents acted carefully in enforcing the rights of Merchants post-bankruptcy

16 | as the assignee of Ben Bridge's lien rights in the watch, the collateral for the loan that

17 | Ben Bridge made to Markarian to purchase the watch.  The postpetition

18 | communications that Respondents had with Markarian stated that they were acting on

19 | behalf of Merchants to enforce its rights to the collateral which they reasonably believed

20 | that Markarian had in his possession because he gave Merchants conflicting stories of

21 | what happened to the collateral and who had it, that is, Markarian first told Jackman that

22 | he pledged it to his father to secure payment of delinquent rent and later told Jackman

23 | that he took the watch to Las Vegas in the company of a woman who was not his wife

24 | and who stole it from him, and Markarian was attempting to negotiate a payment

25 | arrangement with Jackman.  The contents of the postpetition communications of

26 | Respondents show that they were to obtain a return of Merchants' collateral from

27 | Markarian or his father, or voluntary payment in lieu of return of the collateral, and not

28 | for enforcement of a prepetition *in personam* debt against Markarian. Thus,

1   Respondents had an objectively reasonable basis for concluding that Markarian had

2   possession of the collateral and for asking him to return the collateral by retrieving it

3   from his father or otherwise.  If as Markarian told Jackman once, Markarian had given

4   the watch to his father as a pledge for payment of the back rent, it was objectively

5   reasonable and lawful for Respondents to ask Markarian to retrieve the watch from his

6   father or ask his father directly for the return of the watch, Merchants' collateral.  The

7   court finds that oral and written testimony of Jackman and Snyder regarding their

8   actions to enforce Merchants's lien rights in the watch were credible and corroborated

9   by the written correspondence they had with Markarian and his father.

10       Respondents' actions to recover possession of Merchants' collateral, the watch,

11   from Paul Markarian, the father, does not implicate the discharge injunction in this case

12   as Respondents were not attempting to collect a discharged prepetition debt owed by

13   Markarian through his father as he contends.  That is, Respondents acted to enforce

14   Merchants's lien rights in its collateral, the watch. The only actions Respondents took

15   with respect to Paul Markarian was to send him demand letters for the return of

16   Merchants' collateral, to which he (Paul Markarian) never responded. [3]  Thus, by not

17   responding to Respondents' letters, Paul Markarian did not put them on notice that he

18   received the watch in exchange for past due rent as he testified at trial, and thus, Paul

19   Markarian's testimony does not corroborate Markarian's contention at trial that Paul

20   Markarian told Merchants that Markarian no longer possessed the watch when he filed

21   for bankruptcy. Therefore, the court determines that Respondents' actions as to Paul

22   

23   [3] Paul Markarian in his trial declaration stated that he spoke to someone at Merchants "who made me feel
they wanted me to tell my son to pay but he couldn't."  Paul Markarian Declaration at 2.  This declaration

24   further stated: "The representative whom I spoke with, I believe it was Bruce Jackman or someone else,
told me that if my son paid them then it would all go away.  They were constantly trying to pressure me to

25   then pressure my son to pay them.  This was inappropriate pressure."  *Id.*  The declaration further stated:
"When asked about the watch, I told the representative that I have the watch and my son gave me the

26   watch before he filed for bankruptcy because he owed me money for rent."  *Id.*  Then the declaration
stated:  "This happened for many years, and I kept hearing stories from my son about how Merchants

27   Credit Solutions continued to harass him.  Merchants Credit Solutions knew that my son gave the watch
to me and no longer had it."  *Id.* at 3.  Upon cross-examination at trial, Paul Markarian admitted that while

28   he received Merchants's letters, he did not remember any conversation he had with anyone at Merchants.
Based on these admissions, the court finds that the written testimony regarding Paul Markarian's oral
communications with Merchants not to be credible.

Markarian, sending demand letters to him to return of Merchants's collateral, did not violate the discharge injunction in his son's bankruptcy case.

Accordingly, the court determines that Markarian has failed to carry his burden of proving by clear and convincing evidence that there is no fair ground of doubt as to whether the discharge injunction in this case barred Respondents from taking the actions that they took to recover possession of the watch or its value in enforcing Merchants' lien rights in the watch, and the court will deny Markarian's motion to hold Respondents in contempt of the discharge injunction.

Having tried the contested matter of Markarian's contempt motion against Respondents and determined that Respondents should not be held in contempt of the court's discharge injunction, it is not necessary to resolve Respondents' motion for summary adjudication that they cannot be held in contempt based on the preclusive effect of the prior state court default judgment in Merchants's favor against Markarian. According to Respondents, it was not necessary to decide the contempt motion at trial because of the preclusive effect of the prior state court judgment.  That is, apparently, it is Respondents' position that deciding their motion for summary adjudication precludes the court from ruling in favor of Markarian on the contempt motion.  Unfortunately for Respondents, their motion for summary adjudication was not timely filed to be heard before trial, so the court may properly hear the contested matter of Markarian's contempt motion at trial without first ruling on Respondents' motion for summary adjudication.  However, as an exercise of judicial discretion, the court granted leave for Respondents to renew their motion for summary adjudication orally at trial without renoticing it for hearing pursuant to Local Bankruptcy Rule 7056-1 and now addresses the motion for summary adjudication as an alternative basis for decision.

### **Summary Adjudication**

Merchants in renewing its motion for summary adjudication of issues seeks a determination that the state court's default judgment in its favor against Markarian on its claim under California Code of Civil Procedure § 667 has preclusive effect on the factual

issue of whether Markarian converted the collateral, the watch, after he filed for

bankruptcy.  Markarian disputes that he converted the watch postpetition and argues

that his and his father's trial testimony supports his position that he gave the watch to

his father prepetition to satisfy his rent arrearages.  Merchants contends that in entering

default judgment on its claim under California Code of Civil Procedure § 667, the state

court determined that Markarian had possession of the collateral when it filed suit

postpetition, and that such determination is binding on this court.

In Respondents' supplemental trial brief filed on March 15, 2022, they first argue

that Markarian's bankruptcy discharge had no effect on Merchants' surviving *in rem*

right to possession of the collateral, the Rolex watch, and the discharge order did not

somehow grant Markarian an exemption from personal liability for damages resulting

from any postpetition acts.  Supplemental Trial Brief at 9, *citing inter alia, Dewsnup v.*

*Timm,* 502 U.S. 291, 297 (1991) (stating "Ordinarily, liens and other secured interests

survive bankruptcy.").  Respondents argue:

> Absent a bankruptcy filing, where a debtor is in default and has
> possession of his creditor's collateral, he is obligated to comply with California
> Commercial Code ("Comm. Code") § 9609(c), which provides: "If so agreed, and
> in any event after default, a secured party may require the debtor to assemble
> the collateral and make it available to the secured party at a place to be
> designated by the secured party which is reasonably convenient to both parties."
> In the case where the debtor refuses to comply with Comm Code § 9609(c),
> California Civil Code ("Civil Code") § 667 provides in part as follows:  "In an
> action to recover the possession of personal property, judgment for the plaintiff
> may be for possession or the value thereof, in case a delivery cannot be had,
> and damages for the detention." (emphasis added).  The remedy for failing to
> surrender collateral is an action for possession of the collateral or its value if the
> debtor fails to produce the property pursuant to Cal Civ. Code § 667.  After entry
> of a bankruptcy discharge order, where a debtor is in default and has possession
> of his creditor's collateral, the debtor must have the same obligation under
> Comm. Code § 9609(c) to make the collateral available to the creditor.  Likewise,
> he must face the same remedy pursuant to Cal Civ. Code § 667 if he engages in
> the same illegal conduct in refusing to surrender the collateral.

Supplemental Trial Brief at 10, *citing inter alia, Aruda v. Sears Roebuck & Co.,* 310 F.3d

13, 22 (1st Cir. 2002) and *In re Mullen,* 200 B.R. 352, 355 (Bankr. C.D. Cal. 1996).  The

court does not dispute that given the conflicting and incomplete information about the status of the collateral from Markarian, Merchants was within its rights to require him to make the collateral available to it as the secured party pursuant to California Commercial Code § 9609, and Merchants did not violate the discharge injunction in bringing the suit in state court under California Civil Code § 667 praying for relief for possession of the collateral or its value if Markarian had possession at the time he filed for bankruptcy, that is, as argued by Respondents, the "location and/or disposition of the collateral was ambiguous and unresolved." Supplemental Trial Brief at 11.

In support of their motion for summary adjudication, Respondents further argue that after the entry of the bankruptcy discharge order and the case closing order, the proper court to resolve any post-discharge state law claims involving possession of the collateral was the state court, not the federal bankruptcy court, that Merchants filed its lawsuit in state court containing only one cause of action seeking a judgment based on Markarian's post-bankruptcy failure to comply with California Civil Code § 667 by concealing his possession of the collateral and thereby refusing to surrender it, that Markarian was served with the summons and complaint in the state court action, but refused to answer the complaint, resulting in default being entered against him, that the state court entered a default judgment on October 25, 2021 based exclusively on purely the in rem action for possession or the value thereof, that full faith and credit pursuant to 28 U.S.C. § 1738 bars this bankruptcy court from reviewing the issues decided in the state court judgment and that the six factor test for issue preclusion under California law is met. Supplemental Trial Brief at 11-23.

As Merchants observes in its supplemental trial brief, the Ninth Circuit in *White v. City of Pasadena,* 671 F.3d 918 (9th Cir. 2012), recited the legal standard for applying the doctrine of issue preclusion in California as set forth by the California Supreme Court:

> The California Supreme Court established its general rules for issue preclusion in
> the seminal case of *Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal.Rptr. 767,
> 795 P.2d 1223 (1990). According to Lucido, the doctrine of issue preclusion
> "precludes relitigation of issues argued and decided in prior proceedings," when

six criteria are met. *Id*. at 1225. These criteria are: (1) "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding"; (2) the issue to be precluded "must have been actually litigated in the former proceeding"; (3) the issue to be precluded "must have been necessarily decided in the former proceeding"; (4) "the decision in the former proceeding must be final and on the merits"; (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding"; and (6) application of issue preclusion must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id*. at 1225-27.

*Id*. at 927.

In opposition to Respondents' motion for summary adjudication, Markarian argues as follows:

> The simple fact is the state court judgment was based on a default entry. There was no trial or any hearing based on evidence in the state court. That explicitly means that if there was no trial or hearing on the elements in the state court complaint, then there could not have been any findings either – whether explicitly or implicitly. The Respondents, after being on notice of the Motion for Contempt, rushed through and procured the default judgment in order to use it as a sword for summary adjudication.

> The fact remains that the state court made absolutely no findings otherwise there would have been a separate memorandum or opinion of findings of facts and conclusions of law. There wasn't any and this supports this Court's position that the state court did not "necessarily find" that either.

> Moreover, the Court should note the state court complaint contains a total of 12 basic, boilerplate allegations. To summarize, the allegations alleged in the state court complaint state basically that Markarian bought a watch, took a loan from Ben Bridges, made a payment then defaulted, the debt was charged off, Markarian filed for bankruptcy, Respondents purchased the charged off debt, and Markarian resides in Los Angeles County. That is it – nothing more. There were no allegation pleaded in the state court complaint that Markarian converted the collateral before or after the petition date. As such, the state court had no information or facts in front of it to even make any findings. How can the state court have made any findings, whether explicit or necessary or implied, that Markarian converted the collateral before or after the petition date when the state court complaint makes no mention of that allegation?

Movant's Opposition and Brief to Respondent's Motion for Summary Adjudication, Docket No. 78, filed on May 19, 2022 at 1-2.

Regarding the six factors for issue preclusion under California law, arguably,

factor (1), "the issue sought to be precluded from relitigation must be identical to that

decided in a former proceeding", is met as to the issue whether Markarian had

possession of the collateral.  As well, factor (5), "the party against whom preclusion is

sought must be the same as, or in privity with, the party to the former proceeding", is

met as this would be Markarian in the prior state court action and in the contested

matter now before this court.  Moreover, factor (4), "the decision in the former

proceeding must be final and on the merits", is met as the state court default judgment

is final and on the merits where as here, the defendant had actual knowledge of the

lawsuit.  *See Cal-Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1123-1124 (9th

Cir. 2003).

The other three of six factors are questionable, namely, factor (2), the issue to be

precluded "must have been actually litigated in the former proceeding"; factor (3), the

issue to be precluded "must have been necessarily decided in the former proceeding";

and factor (6), application of issue preclusion must be consistent with the public policies

of "preservation of the integrity of the judicial system, promotion of judicial economy,

and protection of litigants from harassment by vexatious litigation."

Regarding whether the state court made actual and necessary findings for the

default judgment to have preclusive effect, as the court previously noted, the state court

in entering default judgment in favor of Merchants and against Markarian did not make

any express factual findings.  Therefore, the court will examine whether the state court

made any implicit factual findings in entering default judgment by considering the

requirements for entry of judgment on the claim under California Code of Civil

Procedure § 667, which were actually and necessarily made.

California Code of Civil Procedure § 667 states:

In an action to recover the possession of personal property, judgment for the
plaintiff may be for the possession or the value thereof, in case a delivery cannot
be had, and damages for the detention. If the property has been delivered to the
plaintiff, and the defendant claim a return thereof judgment for the defendant may
be for a return of the property or the value thereof, in case a return cannot be
had, and damages for taking and withholding the same.

1    In their supplemental trial brief, Respondents argue that the state court in its

2    default judgment actually and necessarily decided the issue of Markarian's conversion

3    of the collateral post-bankruptcy as Merchants's state court complaint only contained

4    one cause of action under California Code of Civil Procedure § 667.  According to

5    Respondents, "Based on the Complaint and the Default Brief, exactly as in *Baldwin*,

6    *supra*, the court could not have granted judgment to MAG [Merchants] unless it found

7    that Markarian converted the Collateral post bankruptcy, therefore the issues were

8    necessarily decided."  Supplemental Trial Brief at 19-20, *citing In re Baldwin,* 249 F.3d

9    912, 919 (9th Cir. 2001).

10    In its state court complaint, Merchants carefully requested in its prayer for relief

11    "[f]or a money judgment under § 667 of the [California] Code of Civil Procedure for the

12    value of Plaintiff's interest in the Collateral, in the sum of $9,319.50 in case delivery

13    cannot be had as a result of Defendants conversion of the Collateral after the

14    commencement of the bankruptcy case."  State Court Complaint, Trial Exhibit R-29 at 3.

15    Merchants had to be careful in its request for relief because if it alleged that Markarian

16    converted the property before the petition, arguably, it would be seeking a money

17    judgment *in personam* against him in violation of the discharge injunction as to

18    collection of prepetition debts as he contends.  However, as Markarian contends in his

19    opposition to Respondents' motion for summary adjudication, Merchants did not make

20    any factual allegations in the state court complaint that he converted the collateral

21    postpetition.  That is, Merchants's state court complaint contains no allegation of

22    material fact that Markarian had possession of the collateral either at the time of filing of

23    his bankruptcy petition or at the commencement of Merchants's state court lawsuit,

24    which is problematic as discussed below.   State Court Complaint, Trial Exhibit R-29 at

25    1-3 (Factual Allegations, ¶¶ 1-13).

26    The court determines that Respondents have not met their burden of showing

27    that summary adjudication should be granted under Federal Rules of Bankruptcy

28    Procedure 7056 and 9014, making Federal Rule of Civil Procedure 56 applicable to the

contested matter of Markarian's contempt motion based on issue preclusion because

they have not demonstrated that the state court in rendering a default judgment actually

and necessarily decided that Markarian converted the collateral post-bankruptcy.

As the Ninth Circuit stated in *In re Baldwin,* "under California law, in order for us

to conclude that the issue had been actually litigated in the prior proceeding, we must

either find that the court made an express finding on the issue or we must conclude that

the issue was necessarily decided in the prior proceeding. *See* [*In re Harmon,* 250 F.3d

1240 (9th Cir. 2001)] *id*. at 1248 (discussing the express finding requirement); *id.* at

1249 (explaining that, as a conceptual matter, if an issue was necessarily decided in a

prior proceeding, it was actually litigated in that proceeding)."  *In re Baldwin,* 249 F.3d at

919.  Respondents do not meet this standard.

First, as noted previously, the state court did not make any express factual

finding that Markarian possessed or converted the collateral post-bankruptcy.

Second, the state court did not make an implicit factual finding necessary to its

default judgment that Markarian possessed or converted the collateral post-bankruptcy.

The state court could have entered a judgment on Merchants' cause of action for claim

and delivery of personal property under California Code of Civil Procedure § 667 if as a

factual matter, Markarian had transferred the collateral pre-bankruptcy without

knowledge of Ben Bridge, Merchants's predecessor-in-interest.  Regarding a cause of

action for claim and delivery, such as under California Code of Civil Procedure § 667,

the treatise, California Jurisprudence, has observed:  "The general rule is that an action

in claim and delivery to recover the possession of personal property will not lie unless,

at the time the action is commenced, the defendant has the possession of the property

or the power to deliver it in satisfaction of a judgment for its possession."  16A

Cal.Jur.3d Creditors' Rights and Remedies § 446 (online edition, May 2022 update),

*citing inter alia, Richards v. Moray,* 133 Cal. 437 (1901).  California Jurisprudence has

also noted an exception to this general rule that a cause of action for claim and delivery

will not lie unless the defendant is in possession of the property at the commencement

of the lawsuit:  "The general rule as to the necessity of the defendant's possession does not obtain where the defendant has been in possession of the property and has, unknown to the plaintiff, wrongfully disposed of it prior to the commencement of the action, for a defendant will not be allowed to part with the property in bad faith and then plead his or her own bad faith as a defense to the plaintiff's cause of action." 16A Cal.Jur.3d Creditors' Rights and Remedies § 447, *citing inter alia, Rathbun v. Hill,* 129 Cal.App. 601 (1933) and *Law v. Heiniger,* 132 Cal.App.2d Supp. 898 (1955); *see also, G and G Productions LLC v. Rusic*. 902 F.3d 940, 953 (9th Cir. 2018) (noting exception in *Law v. Heiniger, supra).*

In *Rathbun v. Hill,* the appellate court rejected the claim of the defendant that a cause of action for claim and delivery could not be maintained against him since he dispossessed himself of the property at issue, holding that the cause of action was maintainable where the defendant wrongfully transferred the property without the knowledge of the plaintiff (though the court reversed on grounds that the trial court gave an erroneous jury instruction regarding damages for claim and delivery).  129 Cal.App. at 606-609.  The court stated:

> While the general rule prevails, as stated by this court in the case of *California Packing Corporation v. Stone*, [64 Cal.App. 488 (1923)] *supra*, that an action in replevin will not lie against one not in possession at the time of the bringing of the suit, yet there is a well–defined exception thereto. The exception is stated as follows in a number of the cases, to wit: "The rule that an action to recover the possession of personal property does not lie against one not in possession of the property, does not obtain where the defendant had been in possession and wrongfully disposed of the property prior to the commencement of the action without the knowledge of the plaintiff at the time."

*Id.* at 606-607.

In *Law v. Heiniger,* the appellate court reversed the trial court's holding that a defendant was not liable on a claim and delivery cause of action for lack of possession of property where he admittedly had possession before the action was brought and did not have a satisfactory explanation of the disposition of the property.  132 Cal.App.2d

Supp. at 899-901.  The court stated: "An exception to the rule, that a cause of action in

'claim and delivery' (replevin) does not exist against one who does not have possession

at the commencement of the action, is made in those cases (detinue) where possession

had been in the defendant but was wrongfully given to another." 132 Cal.App.2d Supp.

at 900, *citing, Faulkner v. First National Bank*, 130 Cal. 258, 264-266 (1900) and *Teter*

*v. Thompson*, 57 Cal.App. 329, 331-332 (1922).

As discussed above, the state court could have entered its default judgment on

Merchants's claim under California Code of Civil Procedure § 667 based on alternative

findings, that either finding that Markarian had possession of the collateral at the time

Merchants filed the state court lawsuit or finding that Markarian had disposed of the

collateral without Ben Bridge's knowledge pre-bankruptcy, which the evidence adduced

at trial indicates, or post-bankruptcy. [4]  The state court in its default judgment did not

indicate that it was making a finding either way.  Therefore, it cannot be determined that

the state court necessarily determined that Markarian had possession of the collateral at

the commencement of the state court lawsuit or during the post-bankruptcy time period.

Third, Merchants' default judgment does not meet the standard for preclusive

effect in any event because its state court complaint did not allege the material facts of

Markarian's possession or conversion of the collateral post-bankruptcy, and the court

should not apply the doctrine of issue preclusion due to this defect in pleading.

As cogently stated by the California Court of Appeal in *Kim v. Westmoore*

*Partners, Inc.,* 201 Cal.App.4[th] 267 (2011), the basic guidelines for analyzing the legal

effect of a default or default judgment are:

> Substantively, "[t]he *judgment by default* is said to 'confess' the material facts
> alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect

---

[4]  As discussed previously, the evidence in this case seems to fit the pattern of the exception to the
general rule of necessity of the defendant's possession on a claim and delivery cause of action because
here, Markarian had been in possession of the property, the watch, and had, unknown to Ben Bridge, or
its assignee, Merchants, wrongfully disposed of it prior to the commencement of the action by Merchants,
prepetition in 2018, and under the exception, the claim and delivery cause of action will still lie "for a
defendant will not be allowed to part with the property in bad faith and then plead his or her own bad faith
as a defense to the plaintiff's cause of action."  *See* 16A Cal.Jur.3d Creditors' Rights and Remedies §
447, *citing inter alia, Rathbun v. Hill, supra* and *Law v. Heiniger, supra.*

as an express admission of *the matters well pleaded in the complaint*." (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 823, 59 Cal.Rptr.3d 1, second italics added).  The "well-pleaded allegations" of a complaint refer "'to all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, 40 Cal.Rptr.3d 205, 129 P.3d 394, quoting *Serrano v. Priest* (1971) 5 Cal.3d 584, 591, 96 Cal.Rptr. 601, 487 P.2d 1241.).

Because the default confesses those properly pleaded facts, a plaintiff has no responsibility to provide the court with sufficient evidence to prove them---they are treated true for purposes of obtaining a default judgment.  (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1746, 33 Cal.Rptr.2d 391.)  But that is all the default does.  There is no penalty for defaulting.  "A defendant has the right to elect not to answer the complaint.  (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 829 [231 Cal.Rptr. 220, 726 P.2d 1295].)  Although this may have been a tactical move by defendant, it is a permissible tactic.  (*Stein v. York* (2010) 181 Cal.App.4th 320, 325, 105 Cal.Rptr.3d 1.)

And if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand.  On appeal from the default judgment, "[a]n objection that the complaint failed to state facts sufficient to constitute a cause of action may be considered."  See (*Martin v. Lawrence,* 156 Cal. 191, 103 P. 913; *Bristol Convalescent Hops. v. Stone,* (1968) 258 Cal.App.2nd 848, 859, 66 Cal.Rptr. 404.)  Moreover, "[w]hen considering the legal effect of those facts, we disregard any erroneous or confusing labels employed by the plaintiff." (*Mead. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 564, 71 Cal.Rptr.2d 625, citing *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908, 274 Cal.Rptr.186.)

*Kim v. Westmoore Partners, Inc.,* 201 Cal.App.4th at 281-282 (italics in original); *see also,* Witkin, *California Procedure,* Proceedings Without Trial, § 216 (6th edition, online edition, May 2022 update)("The judgment by default is said to 'confess' the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint."), *citing inter alia, Brown v. Brown,* 170 Cal. 1, 5 (1915).

In the court's view, the material facts alleged Merchants' complaint in the state court action are not well-pleaded in order for its judgment of default to be said to "confess" the material fact of possession of the collateral by Markarian as required to properly plead a cause of action for claim and delivery under California Code of Civil Procedure § 667.  According to California Jurisprudence, the ultimate facts which must

be pleaded in a claim and delivery action, such as under California Code of Civil Procedure § 667 are:

> (1) that the plaintiff is, at the time of commencement of the action, the owner of the property, or the possessor of some special interest in the property;

> (2) that his or her ownership or special interest is coupled with a right of immediate possession; and

> (3) that the property is, at that time, wrongfully in the defendant's possession.

16A Cal.Jur.3d Creditors Rights and Remedies, § 163, *citing inter alia, Commercial Credit Co. v. Peak,* 195 Cal. 27 (1924), *Fredericks v. Tracy,* 98 Cal. 658 (1893) and *Nudd v. Thompson,* 34 Cal. 39 (1867).

The confession implied from Markarian's default is limited to the material allegations in the complaint, which did not include allegations of possession or conversion by Markarian post-bankruptcy as he argued in his brief opposing Respondents' motion for summary adjudication. *See* Docket No. 78 at 2-3. Because Markarian's post-bankruptcy possession or conversion of the collateral were not material facts alleged in Merchants's complaint in the prior state court action, [5] the doctrine of conclusive admission of material facts through default judgment is not applicable. *Kim v. Westmoore Partners, Inc.,* 201 Cal.App.4th at 281-282. Thus, the court should not give effect to a default judgment in a prior action on a complaint which is not based on well-pleaded facts and declines to apply issue preclusion based on the default judgment obtained by Merchants in the state court action to hold that Markarian is precluded or estopped from contending that he did not have possession of the collateral at the time he filed for bankruptcy or that the court must so find based on the

---

[5] The court acknowledges that Merchants' papers requesting entry of default judgment in the state court action, Exhibit 33 (request for entry of default), Exhibit 34 (request for entry of default judgment) and Exhibit 36 (Declaration of Bruce Jackman in support of request for entry of default and default judgment) do assert as a material fact that on information and belief Markarian had possession of the collateral post-bankruptcy. However, as recognized by the case law, such as *Kim v. Westmoore Partners, Inc.,* 201 Cal.App.4th at 281-282, the operative document for determining whether there were conclusive admissions of material facts through default judgment is the complaint in the prior action. The default judgment papers were not the complaint and are not the operative documents for determining the existence of conclusive admissions of material facts through default judgment.

1  effect of the default judgment in the state court action.

2       For the foregoing reasons, the court will deny Respondents' motion for summary

3  adjudication of issues.

4       Based on the foregoing, the court will deny Markarian's motion for contempt and

5  Respondents' motion for summary adjudication of issues.  The court will enter a

6  separate final order concurrently herewith.

7       IT IS SO ORDERED.

8                                         ###

Date: July 5, 2022

_____

Robert Kwan
United States Bankruptcy Judge